ZIPP v. BARKER et al.

(Supreme Court, Special Term, Kings County. December, 1898.)

1. DEEDS—RESTRICTIONS—ENFORCEMENT.

By a partition deed it was mutually covenanted that no building should be erected on a strip lying between a street and a line fixed as the building line. Defendant erected on such reserved strip a substantial iron structure as a florist's store, and plaintiff sought to restrain its continuance as a violation of the covenant. The character of the neighborhood

had changed from residence to business property. *Held*, that as the restriction did not prevent the use of the premises for business purposes, but only created a building line, its breach would be enjoined.

2. SAME—SUCCESSORS.

Where a testator takes title to premises, charged with notice of and subject to a restriction, those who succeed to his title cannot be heard to complain thereof.

3. SAME—BREACH—EVIDENCE.

Where a deed of partition reserves a strip on either side of a street, with mutual covenants not to erect buildings thereon, it is no excuse for a breach of the covenant that there were violations on the opposite side of the street.

Action by Rosa Zipp, as executrix, against Frances E. Barker and others, to enforce certain covenants. Judgment for plaintiff.

J. T. Langan (Geo. G. Reynolds, of counsel), for plaintiff.
M. J. Scanlan, for defendants.

MADDOX, J. The covenant sought to be enforced is one fixing the building line on each side of De Bevoise (now Elm) Place, and to "insure an open space" of 80 feet "between the line of the buildings, * * * and the observance of uniformity in the location of such lines." On the partition map, which is referred to in and made a part of the partition deed, is shown a strip of land, 15 feet in width, along each side of De Bevoise Place, the inner line thereof being the exterior line of the lots adjoining the same; and hence the land in said strips was not embraced within the lines of said lots as they are delineated on said map, nor does the strip form any part of the street, but was expressly reserved by the co-parceners as open spaces; and they, in and by said partition deed, mutually covenanted, in relation thereto, "that no dwelling house, storehouse, or other building or structure, of any kind or description whatsoever (excepting fences), shall at any time or times hereafter be erected" thereon, but that every such building or structure so to be erected shall be on the lines therein fixed,—that is, so far as concerns us here, upon a line 40 feet from the center of De Bevoise Place, which is, as we find, the inner line of the said strip on each side of the street, but "without any restriction upon the right to erect and maintain fences or other ornamental inclosures along the line" of said street, or "to inclose and improve" the said strips "as courtyards or ornamental grounds." By reference to the partition deed, it will be seen that the grant was of the lots therein allotted and "designated by numbers, * * * and also of * * * one-half in width of the several streets" in front thereof, "to be used and kept open as public streets," which language is plainly sufficient to include, as a part of the premises conveyed, the strip in front thereof, subject to the aforesaid covenant. No other intent can be gathered from the reading of the deed, since, in addition to the above language, some of the lots are therein referred to as being on the easterly or westerly side, as the case may be, of said De Bevoise Place. The descriptions in the deeds to the predecessors in title of the defendants Barker commence on the westerly side of De Bevoise Place, and consequently the conclusion is that the Barkers are the

owners of so much of said strip as adjoins their property on the corner of Fulton street. The defendants Weir are lessees of the said Barker property, and have erected upon said strip of land so reserved a substantial structure of iron and glass, one story in height, and used as a florist's store, extending along the said Barker property, and therefrom to about the exterior line of said street; and plaintiffs seek hereby to restrain its continuance, as in violation of said covenant, while defendants contend that, as the conditions have so changed that an enforcement thereof would be inequitable, plaintiffs should be remitted to their remedy in an action at law for their damages, if any.

The covenant in question is not in restraint of any business or manufacturing use, nor is it restrictive to residential purposes, but, as above stated, may be said to only fix a building line on each side of the street, beyond which buildings or structures, excepting fences, must not be erected, and thereby insuring uniformity of such lines, also of the width of the open space (80 feet) between such lines, and, since there is no obligation on the owners to fence the same, an added width to the street of 15 feet if said strip be not inclosed. That the character of the neighborhood has changed, and that it is no longer of a residential, but is now of a business, character, has been established by the evidence, and I so find. Land is valuable in that immediate locality, especially if fronting on Fulton street, with the right to build thereon; but defendants' testator took title to the premises described in the complaint, on the corner of Fulton street and Elm Place, charged with notice of and subject to the covenant, presumably with full knowledge of the restrictions against the erection of buildings or structures upon the strip so reserved as an open space, and those who have succeeded to his interests and title cannot be heard to complain because of the restrictions of that covenant. It would be very different, indeed, if the restrictions related to the use for business purposes of land acquired with the right to build thereon, or to the character of the buildings to be erected. As was said by Mr. Justice Cullen in Association v. Simon, in which this same covenant was under consideration:

"But the restriction as to the property line on a street is as advantageous to store or business property as to property used for the purpose of dwellings. * * * It would hardly be seriously contended that, on account of such change, the property would be improved by holding the restriction no longer operative."

The construction of the covenant is clear, the breach thereof is conceded, and, since the specific enforcement of the covenant will not defeat any of the ends contemplated thereby, and as it does not appear that the restriction is no longer applicable to the present conditions, sufficient ground exists for equitable interference, unless such enforcement would impose great hardship, damage, and injustice upon the defendants, without any considerable gain to the plaintiffs. The defendants have suffered no loss of right, privilege, or benefit which they had before enjoyed in the use of the land in question, consequent to such changed character of the neighbor-

hood, and to justify relief from the specific enforcement of a covenant running with the land, the hardship, damage, and injustice must grow out of such change of conditions.

There has been no common course of action showing an abandonment of the easements in the reserved strips appurtenant to each lot on Elm Place, and, while it is true that there have been violations of the covenant on the opposite side of that street, there is no proof that plaintiffs have, in any wise, assented thereto. Such violations afford, however, no excuse or justification for the defendants' breach of the covenant.

Since there is no merit or equity in defendants' contention, judgment is directed for the plaintiffs, as prayed for in the complaint, with costs.